UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PROVPORT, INC.
Plaintiff and
Defendant-In-Counterclaim

vs. C.A. NO. 04-329-L

METALS RECYCLING, L.L.C.
Defendant and
Plaintiff-In-Counterclaim

## PROVPORT, INC.'S OBJECTION TO METALS RECYCLING, L.L.C.'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

Plaintiff and defendant-in-counterclaim, ProvPort, Inc., hereby objects to defendant and plaintiff-in-counterclaim, Metals Recycling, L.L.C.'s, Motion To Compel The Production Of Documents for the reasons set forth in the accompanying Memorandum in support of this Objection.

**WHEREFORE**, ProvPort, Inc. respectfully requests that the Court deny the Motion To Compel The Production Of Documents, and award to ProvPort, Inc. its reasonable attorneys' fees, costs and expenses incurred in the preparation and presentation of this Objection and the accompanying Memorandum.

ProvPort, Inc.

By its Attorneys,

Stephen J. Reid, Jr. #2811
Blish & Cavanagh, LLP
30 Exchange Terrace
Providence, RI 02903
(401) 831-8900
(401) 751-7542 (fax)

Dated: September 12, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of September , 2005, I caused a copy of the foregoing ProvPort, Inc.'s Objection To Metals Recycling, L.L.C.'s Motion To Compel The Production Of Documents to:

R. Daniel Prentiss, Esq.
Gregory L. Benik, Esq.
John P. Walsh, Esq.
Holland & Knight, LLP
One Financial Plaza, Suite 1800
Providence, RI 02903

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PROVPORT, INC.
Plaintiff and
Defendant-In-Counterclaim

vs. C.A. NO. 04-329-L

METALS RECYCLING, L.L.C.
Defendant and
Plaintiff-In-Counterclaim

## MEMORANDUM IN SUPPORT OF PROVPORT, INC.'S OBJECTION TO METALS RECYCLING, L.L.C.'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

### I. Background

On or about July 13, 2005, defendant and plaintiff-in-counterclaim, Metals Recycling, L.L.C. ("Metals"), served on plaintiff and defendant-in-counterclaim, ProvPort, Inc. ("ProvPort"), a Second Set Of Requests For Production (the "Requests").

On or about August 5, 2005, ProvPort served on Metals its Responses To Second Set Of Requests For Production (the "Responses").[1] The Responses to each of the Requests are identical:

Response: ProvPort objects to this Request on the grounds that it is oppressive, unduly burdensome, overly broad, seeks documents which are irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Metals has filed a Motion To Compel Production and ProvPort has filed an Objection thereto, which Motion and Objection are presently before the Court.

---

[1] A copy of the Responses, which include the Requests, is attached hereto as Attachment "A".

## II. Argument

In support of its Motion, Metals argues:

> In this case, the Plaintiff has sought to apply an amended tariff rate based on *inter alia*, 46 C.F.R. 525.2(a)(2). Under this provision: "[a]ny schedule that is made available to the public by the marine terminal operator shall be enforceable by an appropriate court as an implied contract." 46 C.F.R. 525.2(a)(2). Thus, the Plaintiff argues that the Defendant must pay the amended tariff rate in accord with a statutorily imposed "implied" contract rate. In determining the validity of this contract issue, therefore, the Defendant has a right to discovery concerning the issue of whether the Plaintiff has applied this same rate to other similarly situated parties because this information may lead to admissible evidence about whether this court should interpret the contract at issue to incorporate this "implied" rate. . .
>
> * * *
>
> . . . It is not unreasonable for the Defendant to ask for documents that demonstrate how the Plaintiff has applied the "Tariff, as amended" to other parties in order to ascertain whether those amended rates should be implied into Defendant's contract with the Plaintiff.

(Emphasis added.) (Defendant Metals Recycling, LLC's Memorandum Of Law In Support Of Its Motion To Compel ("Metals' Memorandum"), at pages 4-5.)

This argument fails with respect to the actual Requests for several reasons.

**First**, certain of the Requests seek the production of documents which are completely unrelated to the Tariff, a copy of which is attached as Exhibit "A" to the Verified Complaint. Specifically:

a. **Request No. 1:** All leases that have been in effect at Port of Providence from 1996 to date. (Emphasis added.)

The Verified Complaint (the "Complaint") seeks to recover amounts due and owing from Metals to ProvPort in five categories: Count I - Dockage; Count II -

Wharfage; Count III- Usage; Count IV - Rent and Related Charges; and Count V - Repairs. While the Tariff clearly addresses the subjects of Dockage, Wharfage, and Usage, it does not cover the subject of Rent. Thus, the Complaint alleges in pertinent part as follows:

> 4. Metals, at all times material hereto, has been a tenant at the Port, either pursuant to the terms of a lease agreement or on a month-to-month tenancy at sufferance following the termination of the lease agreement.
>
> 5. On June 10, 1994, Port of Providence Terminal Tariff No. 200 (the "Tariff") was duly issued by Thomas F. O'Connor, Jr., Executive Director of the Port, which Tariff became effective on July 10, 1994. A copy of the Tariff is attached hereto and incorporated herein by reference as Exhibit "A". ProvPort has at all times material hereto applied the rates and charges set forth in the Tariff, as amended, with respect to, inter alia, "dockage" "wharfage", and "usage".
>
> (Emphasis added.)

Therefore, the reliance by Metals upon the Tariff in its argument in support of the Motion To Compel the production of "[a]ll leases" is entirely misplaced. Moreover, since 1996 there have been several tenants at the Port of Providence which have been parties to lease agreements separate and distinct from the lease agreements between ProvPort and Metals. The terms of those lease agreements with other tenants are entirely irrelevant, and their production would not reasonably be calculated to lead to the discovery of admissible evidence. Clearly, the Request is oppressive, unduly burdensome, and overly broad. Thus, the Objection set forth in the Response to Request No. 1 is well-grounded, and ProvPort should not be compelled to produce those documents.

b. **Request No. 2:** All communications by ProvPort, or by any person acting on behalf of ProvPort, made in connection with the 2003 Bond Refinancing in which there was any reference to leases in existence at the Port of Providence and/or any reference to lease income at the Port of Providence. (Emphasis added.)

As discussed supra with respect to Request No.1, the Tariff does not cover the subject of Rent. Again, therefore, the reliance by Metals upon the Tariff in its argument in support of the Motion To Compel the production of all communications in which there was "any reference to leases" and/or "any reference to lease income" is entirely misplaced. Any such communications about irrelevant lease agreements are also irrelevant, and their production would not reasonably be calculated to lead to the discovery of admissible evidence. The Request is oppressive, unduly burdensome, and overly broad. The Objection set forth in the Response to Request No. 2 is well-grounded and ProvPort should not be compelled to produce those documents.

c. **Request No. 5:** All revenue projections that were prepared in connection with the 2003 Bond Refinancing, and itemize the revenue by the appropriate category. (Emphasis added.)

Here again, the reliance by Metals upon the Tariff is entirely misplaced. Simply stated, the Tariff does not address "revenue projections" or "itemize[d] revenue". Moreover, any inquiry concerning the so-called "2003 Bond Refinancing" is completely irrelevant to the issues in this action. The Objection set forth in the Response to Request No. 5 is well-grounded, and ProvPort should not be compelled to produce those documents.

**Second**, those Requests which seek the production of documents regarding dockage, wharfage, and usage also seek the production of documents which are completely unrelated to the Tariff. Specifically:

**Request No. 3:** All rate schedules, or any other documents, that contain the rates at which ProvPort has charged any person or entity for rent, wharfage, dockage, or usage from 1996 to the present. (Emphasis added.)

**<u>Request No. 4:</u>** All invoices to all persons or entities for <u>rent</u>, wharfage, dockage or usage from 1996 to date.
(Emphasis added.)

To the extent that Requests No. 3 and 4 seek the production of documents which contain rates, or constitute invoices, for rent, the Tariff argument relied upon by Metals is yet again entirely misplaced for the reasons discussed with respect to Request No. 1 and Request No. 2, <u>supra</u>. Therefore, the Objection set forth in the Responses to Requests No. 3 and 4, as those Requests pertain to the subject of "rents", are well-grounded, and ProvPort should not be compelled to produce those documents.

**Third**, even as to the Requests which seek the production of documents regarding dockage, wharfage, and usage, Metals' argument in support of its Motion To Compel fails. Those requests are as follows:

**<u>Request No. 3</u>:** <u>All rate schedules, or any other documents, that contain the rates at which ProvPort has charged any person or entity</u> for rent, wharfage, dockage, or usage from 1996 t o the present.

**<u>Request No. 4:</u>** <u>All invoices to all persons or entities</u> for rent, wharfage, dockage or usage from 1996 to date.
(Emphasis added.)

Metals argues that the requested documents "may lead to admissible evidence about whether this Court should <u>interpret the contract</u> at issue to incorporate this 'implied' rate." (Emphasis added.) (Metals' Memorandum, at page 5.) In Support of this argument, Metals relies upon <u>Public Service Enterprise Group, Inc.</u> v. <u>Philadelphia Electric Co.</u>, 130 F.R.D. 543, 548-551 (D.N.J. 1990). However, that case is inapposite and, therefore, Metals' reliance upon it is misguided.

The underlying dispute in Public Service Enterprise, supra, was:

> "The meaning of Contractual provisions in the Peach Bottom Owners Agreement concerning sharing of liability and costs among the co-owners are in dispute." 130 F.R.D. at 544.

"The meaning of these contractual clauses is in dispute . . ." 130 F.R.D. at 545.

As noted by the Court:

> These same parties have a second ownership agreement, almost identical to the Peach Bottom Owners Agreement, concerning the co-ownership and operation of the Salem Atomic Power Station in New Jersey.
>
> * * *
>
> PECo alleges that the co-owners' cost sharing in connection with these three Salem outages, and the absence of any attempt by PECo, Atlantic or Delmarva to seek recovery from Public Service, are evidence of a course of performance illuminating the cost sharing provisions of the Peach Bottom and Salem Owners Agreements in cases of losses accruing from alleged operator mismanagement.
> (Emphasis added.) 130 F.R.D. at 545-46.

Discussing Pennsylvania law regarding "Course of Performance Information", the Court held:

> . . . Under Pennsylvania law, the parties' course of performance may bear upon contractual interpretation, as the Supreme Court has held that the parties' "action under [an agreement] is often the strongest evidence of their meaning," and that "course of performance is always relevant in interpreting a writing." Atlantic Richfield Co. v. Razumic, 480 Pa. 366, 390 A.2d 736, 741 & n.6 (1978), citing Restatement (Second) of Contracts §228(4) (Tent. Draft No. 5, 1970) [now appearing as §202(4)]. (Emphasis added.) 130 F.R.D. at 548-49.

The pertinent undisputed facts of the case presently before this Court are entirely different than those in Public Service Enterprise, supra. Here, there is one implied contract between the parties (i.e., the Tariff, as amended), not two. This case does not involve or require "contractual interpretation", as the Tariff, as amended, is

clear and unambiguous on the subject of the rates to be charged for dockage, wharfage, and usage, including specific "Wharfage Rates" for "scrap metal" in Item 104 of Rule 34.5:

"e) Scrap metal shall be assessed at eighty cents ($.80) per ton of 2,000 lbs."[2]

It is well-established that in the absence of ambiguity, the Court must look only to the language of the contract itself to determine the meaning of the contract language. Smart v. Gillette Co. Long Term Disability Plan, 70 F.3d 173, 178 (1st Cir. 1995); Systemized of New England, Inc. v. SCM, Inc., 732 F.2d 1030, 1034 (1st Cir. 1984); Unum Life Ins. Co. of America v. Cappello, 278 F. Supp. 2d 228, 233 (D.R.I. 2003).

Metals asserts that the documents sought by Requests No. 3 and 4 "may lead to admissible evidence about whether this Court should interpret the contract at issue [i.e., the Tariff, as amended] to incorporate this 'implied' rate [i.e., the rates for dockage, wharfage, and usage clearly set out in the Tariff, as amended] into Defendant's contract with Plaintiff." However, there is nothing to interpret, as the Tariff rates are clear and unambiguous. Moreover, 46. C.F.R. §525.2(a)(2) clearly provides that:

> "[a]ny schedule that is made available to the public by the marine terminal operator shall be enforceable by an appropriate court as an implied contract." (Emphasis added.)

Finally, based on the volume of business at the Port of Providence from 1996 to the present, Requests No. 3 and 4 are without question oppressive, unduly burdensome, and overly broad . Therefore, the Objection set forth in the Responses to Requests No.

---

2 Effective May 1, 2004, the wharfage rate for scrap metal was increased to $1.25 per ton of 2,000 pounds.

3 and 4, as those Requests pertain to the subjects of "wharfage, dockage, or usage", are well-grounded, and ProvPort should not be compelled to produce those documents.[3]

## III Conclusion

For all of the foregoing reasons, ProvPort respectfully requests that the Court deny the Motion To Compel The Production Of Documents.

ProvPort, Inc.

By its Attorneys,

Stephen J. Reid, Jr. #2811
Blish & Cavanagh, LLP
30 Exchange Terrace
Providence, RI 02903
(401) 831-8900
(401) 751-7542 (fax)

Dated: September 12, 2005

3 Notwithstanding these arguments, should the Court consider requiring ProvPort to produce documents sought by Requests No. 3 and 4, then the scope of those documents should be limited to other tenants engaged in the same or similar business as Metals, as suggested in Metals' Memorandum, at page 5:

> ". . . discovery concerning the issue of whether Plaintiff has applied this same rate to other similarly situated parties. . ." (Emphasis added.)

In addition, the period of time should be shortened "from 1996 to the present" to "from 2000 to the present".

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of September, 2005, I caused a copy of the foregoing Memorandum In Support Of ProvPort, Inc.'s Objection To Metals Recycling, L.L.C.'s Motion To Compel The Production Of Documents to be hand-delivered to:

R. Daniel Prentiss, Esq.
Gregory L. Benik, Esq.
John P. Walsh, Esq.
Holland & Knight, LLP
One Financial Plaza, Suite 1800
Providence, RI 02903

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PROVPORT, INC.
Plaintiff and
Defendant-In-Counterclaim

vs. C.A. NO. 04-329-L

METALS RECYCLING, L.L.C.
Defendant and
Plaintiff-In-Counterclaim

**PROVPORT, INC.'S RESPONSES TO SECOND SET OF REQUESTS FOR PRODUCTION BY METALS RECYCLING, L.L.C.**

Plaintiff and defendant-in-counterclaim, ProvPort, Inc. ("ProvPort"), objects to the Second Set Of Requests For Production by defendant and plaintiff-in-counterclaim, Metals Recycling, L.L.C., to the extent that the documents sought are protected by the attorney-client privilege and/or work product privilege. Without waiving but specifically preserving and incorporating these preliminary objections in its Responses to the individual Requests, ProvPort hereby responds to that Second Set Of Requests For Production as follows:

**Request No. 1:** All leases that have been in effect at Port of Providence from 1996 to date.

**Response**: ProvPort objects to this Request on the grounds that it is oppressive, unduly burdensome, overly broad, seeks documents which are irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence.

EXHIBIT "A"

**Request No. 2:** All communications by ProvPort, or by any person acting on behalf of ProvPort, made in connection with the 2003 Bond Refinancing in which there was any reference to leases in existence at the Port of Providence and/or any reference to lease income at the Port of Providence.

**Response:** ProvPort objects to this Request on the grounds that it is oppressive, unduly burdensome, overly broad, seeks documents which are irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Request No. 3:** All rate schedules, or any other documents, that contain the rates at which ProvPort has charged any person or entity for rent, wharfage, dockage, or usage from 1996 to the present.

**Response:** ProvPort objects to this Request on the grounds that it is oppressive, unduly burdensome, overly broad, seeks documents which are irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Request No. 4:** All invoices to all persons or entities for rent, wharfage, dockage or usage from 1996 to date.

**Response:** ProvPort objects to this Request on the grounds that it is oppressive, unduly burdensome, overly broad, seeks documents which are irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Request No. 5:** All revenue projections that were prepared in connection with the 2003 Bond Refinancing, and itemize the revenue by the appropriate category.

**Response:** ProvPort objects to this Request on the grounds that it is oppressive, unduly burdensome, overly broad, seeks documents which are irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence.

ProvPort, Inc.

By its Attorneys,

Stephen J. Reid, Jr. #2817
Blish & Cavanagh, LLP
30 Exchange Terrace
Providence, RI 02903
(401) 831-8900
(401) 751-7542 (fax)

Dated: August 5, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of August, 2005, I caused a copy of ProvPort, Inc.'s Responses To Second Set Of Requests For Production By Metals Recycling, L.L.C. to be mailed to:

R. Daniel Prentiss, Esq.
Gregory L. Benik, Esq.
John P. Walsh, Esq.
Holland & Knight, LLP
One Financial Plaza
Providence, RI 02903